**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **NO. 5:23-CR-00082-KKC-MAS-2** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MAKYLA CHEYENNE STEWARD,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |

**<u>DETENTION OPINION & ORDER</u>**

The Indictment alleges that Defendant Makyla Cheyenne Steward ("Steward") conspired to distribute 5 kilograms or more of a substance containing cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846; and possessed 5 kilograms or more of a substance containing cocaine in violation of 21 U.S.C. § 841(a)(1). [DE 1 (Indictment)]. The United States properly moved for detention under 18 U.S.C. § 3142(f)(1)(B), (C). [DE 17]. After considering the record—including testimony, proffer, and arguments—the Court shall grant the United States' motion and detain Steward pending trial.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

According to the Affidavit in Support of the Criminal Complaint ("Affidavit") prepared prior to Steward's indictment by a federal grand jury, the Drug Enforcement Administration ("DEA") began investigating an individual suspected of laundering of

1

illegal drug proceeds on January 17, 2023.  [DE 1-1 (Affidavit), PageID# 22–23, ¶ 5].
The individual was identified as Kenneth Berry ("Berry").  DEA Special Agent
Christopher Hill ("Agent Hill") testified at the detention hearing that the DEA has
physically and electronically surveilled Berry since the inception of the DEA
investigation.  Through such surveillance, law enforcement identified Steward—
Berry's girlfriend with whom he lived and shares a child—as another person of
interest in the investigation.  [DE 31 (Pretrial Services Report ("PSR")), PageID# 83].

At the time of their arrest, Berry and Steward lived together at 201 Lynnwood
Drive ("Lynnwood") and were often seen coming and going together or separately
from that address. [DE 29 (Detention Hearing)]; *see also* [DE 31 (PSR), PageID# 84].[1]
Steward also rented another apartment on Redding Road ("Redding Road"), which
law enforcement believed to be a stash house utilized by both Berry and Steward.
Another location of interest was storage unit H378 at Space Center Storage ("Unit
H378"),[2] where law enforcement suspected Berry and Steward also stored illegal
controlled substances.

Based on testimony and proffer offered during the detention hearing, it
appears that drug trafficking operation was controlled by both Berry and Steward.
The operation, for its size, was exceptionally sophisticated in its strategy and the
sheer amount of product moving during various transactions.  Based on surveillance

---

[1] According to the PSR, Berry and Steward lived together at the Lynnwood address with their shared child, two year-old Kaliyah Berry, and Steward's five year-old son from a previous relationship with Antonio Simpson.  [DE 31 (PSR), PageID# 84].
[2] According to Agent Hill, Unit H378 was rented to Diana Clay, who is not suspected to be part of the drug trafficking operation.

of such transactions, Agent Hill estimated that Berry and Steward were moving 8–10 kilograms of controlled substances on at least a weekly basis since DEA surveillance began.  Agent Hill specifically noted that Berry and Steward compartmentalized different aspects of the operation by working out of three different locations: Lynnwood, Redding Road, and Unit H378.

Agent Hill further testified that Steward's role in the operation was more than that of a drug runner.  Both apartments were in Steward's rented name.  She was frequently seen coming and going from Lynnwood, Redding Road, and Unit H378, all while transporting suspected controlled substances on her own and without Berry. More importantly, Agent Hill estimated that Steward participated in drug trafficking transactions 2–3 times per week since the inception of the DEA's investigation.

The activity between July 13, 2023 and Berry and Steward's arrest on July 18, 2023 was the subject of much of the detention hearing.  On July 13, 2023, Agent Hill testified that Berry and Steward left the Lynnwood residence in Steward's Honda Accord and drove to The Summit at Fritz Farm in Lexington, Kentucky.  Steward exited the vehicle to conduct counter surveillance at a nearby gas station while Berry proceeded to drive the car to the parking lot. After changing spots multiple times, Berry ultimately parked next to a vehicle with a Tennessee license plate.  An agent observed the driver of the Tennessee vehicle transfer a red bag to the Honda Accord.

From there, Berry and Steward went to Space Center Storage and accessed Unit H378.  Agents observed through electronic surveillance Steward picking up the red backpack and putting it inside Unit H378.  On July 17, 2023, agents observed

Steward take the red backpack from Unit H378 and transport it Redding Road.  On July 15, 2023, agents observed Steward visiting Unit H378 alone.  She exited the unit with several rectangular shaped objects under her shirt and in her pockets, which Agent Hill testified to be suspected kilos of an unknown narcotic.

On July 18, 2023, law enforcement observed Berry leave the Lynnwood residence with a large white bag appearing to contain a box.  [DE 1-1, PageID# 23, ¶ 6].  Berry entered Steward's Honda Accord, and Steward was a passenger.  The two of them again drove to The Summit at Fritz Farm, this time meeting a gray Honda Ridgeline registered in Florida.  [DE 1-1, PageID# 23, ¶ 6].  Agent Hill observed a male exit the Honda Ridgeline and remove the white bag from Steward's Honda Accord.  The same male who removed the white bag placed a dark colored Pelican case in the Honda Accord before leaving the parking lot.  Berry and Steward drove to Space Center Storage, where law enforcement observed through electronic surveillance Steward placing the Pelican case in Unit H378 and then leaving.

Later that day, Kentucky State Police ("KSP") identified the male with whom Berry and Steward met and exchanged the white bag for the dark Pelican case as Wenceslao Mariscal Vellejo ("Vellejo").  Along with cocaine and U.S. currency, KSP located the white bag retrieved from Steward's Honda Accord.  The white bag contained a Cinnamon Toast Crunch Box with vacuum sealed U.S. currency.  Vellejo admitted that the Pelican case he gave to Berry and Steward contained cocaine.  [DE 1-1, PageID# 23–24, ¶ 7].  Agent Hill testified that, when law enforcement executed

a search warrant for Unit H378, they found approximately 6 kilograms of cocaine inside the Pelican case and one additional kilogram of cocaine in a black backpack.

Law enforcement also executed a search warrant for the Lynnwood residence, where Berry and Steward lived with their children.  Agent Hill described that the house smelled like marijuana upon entry.  During the search, law enforcement recovered a fully loaded Mini Draco from the master bedroom closet.  They also discovered two money counters and between 15 and 20 thousand dollars in U.S. currency.  At the Redding Road residence, law enforcement executed a search warrant and recovered a kilo press and other materials used to package controlled substances.

Agent Hill testified that, on July 18, 2023, Berry and Steward were arrested by KSP in a Texas Roadhouse Parking lot.  On Steward's person during the arrest was a loaded handgun.  Arresting officers noted a strong smell of marijuana emanating from the vehicle and that Berry and Steward appeared to be under the influence of a controlled substance.

## II.   <u>LEGAL FRAMEWORK</u>

Given the charges, a detention presumption arises under the Bail Reform Act, 18 U.S.C. § 3141, *et seq.*, ("BRA") as to both nonappearance and danger risk. 18 U.S.C. § 3142(e)(3)(A).   Accordingly, a defendant carries a "burden of production" to overcome the presumption by offering "at least some evidence" that he is neither at risk of nonappearance nor endangering the community.  *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010).  The production burden "is not heavy," and the Government retains the ultimate burden of persuasion.  *Id.*  If the defendant fails to

rebut the presumption, he must be detained.  Even if the defendant rebuts the presumption, the presumption remains a factor in determining detention.  *Id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

However, if a defendant rebuts the presumption of detention, the burden shifts back to the United States to persuade the Court that detention is nevertheless warranted.  Detention, based on danger, must rest on facts supported by clear and convincing evidence. 18 U.S.C. § 3142(f).  A flight-based (or, more accurately, nonappearance-based) detention decision must rest on facts supported by a preponderance of evidence.  *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-82-DCR, 2006 U.S. Dist. LEXIS 49661, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006).  Further, almost any conditional release ultimately depends on a court's assessment of a defendant's good faith intentions and predicted compliance with conditions imposed.  *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (evaluating predicted good faith compliance as critical release component).

Evidence rules do not apply in the detention hearing context. 18 U.S.C. § 3142(f).  The hearing is informal, and the Court may consider a wide range of proof, weighing the evidentiary reliability and accuracy.  *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291 [published in full-text format at 1998 U.S. App. LEXIS 13553], 1998 WL 381686, at *1 (6th Cir. June 22,

1998).  The nature and quality of proof impacts its probative value and weight in the detention calculus.  The § 3142(g) factors guide the analysis.[3]

### III.   ANALYSIS

The Court conducted a detention hearing and afforded both sides all procedural rights outlined in the BRA. [DE 29].  Below, the Court shall consider all testimony, proffer, and arguments from the parties to assess whether Steward has overcome the presumption of detention and, if so, whether the United States met its burden of persuasion that the § 3142 factors demand detention.

### A.   RISK OF NONAPPEARANCE

As a threshold matter, the Court finds that Steward overcame the presumption as to her risk of nonappearance.  As noted in the PSR and by counsel during the

---

[3] The subsection directs the Court to balance the following:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including--
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

detention hearing, Steward has very limited criminal history with no prior felonies. *See generally* [DE 31 (PSR)].  Of her minor offenses (most of which are traffic offenses), Steward was placed on probation for a period of two years, but the PSR does not note any issues related to nonappearance.  Counsel proffered that Steward has significant family support and that her mother and aunt were present during the detention hearing.  Her aunt, a teacher in Northern Kentucky, volunteered to assume responsibility for Steward while on pretrial release.  Both her aunt and her mother indicated that they would also help care for Steward's children in addition to ensuring that Steward is present for court appearances.  Counsel further proffered that any risk of nonappearance or flight is mitigated by the fact that Steward has two young children and is 19 weeks pregnant.

The above facts lead the Court to find that Steward has met her burden of production to show that she is not at risk of nonappearance.  The United States did not substantively address or argue Steward was a risk of nonappearance.  Thus, the United States has failed to establish by a preponderance of evidence that Steward is a risk of nonappearance, and the Court is able to create conditions that would mitigate any risk of nonappearance.

## B.    RISK OF DANGER

Steward likewise successfully rebutted the presumption of detention as to her risk of danger to the community.  Counsel's proffer that the oversight and support of Steward's aunt and mother, in addition to conditions restricting Steward's access to electronic devices, demonstrated that Steward's danger to the community could be mitigated by conditions created by the Court.   The Court finds that these

considerations are sufficient to meet Steward's low production burden, overcoming the detention presumption as to danger. *See Stone*, 608 F.3d at 945; *see also Hernandez*, 2002 WL 1377911, at *2 (requiring "probative, credible evidence to rebut the presumption"). However, the BRA factors ultimately weigh in favor of detention and the Court does not find that any conditions or combination of conditions will effectively address the appreciable danger of continued drug trafficking activity. For the reasons discussed below, the Court finds that the United States has shown by clear and convincing evidence that danger-based detention is required.

> ### 1.     <u>Nature and Circumstances of the Offense</u>

The first BRA factor is the "nature and circumstances of the offense charged, including whether the offense . . . involves a . . . controlled substance, [or] firearm[.]" 18 U.S.C. § 3142(g)(1). The allegations set forth in the Complaint, and further elaborated upon during the detention hearing, suggest that Steward was involved with a sophisticated trafficking operation peddling controlled substances such as cocaine. And, as discussed in greater detail below, Steward's role in the operation was not minor. In fact, she acted with considerable autonomy when it came to moving product or currency.

Both the nature of the offense—a presumption drug trafficking case—and the surrounding circumstances heavily favor Steward's detention. The BRA manifestly signals Congressional belief in the inherent, exceptional dangerousness of the at-issue offenses. And as discussed, the detention presumption stemming from them "does not vanish simply because a defendant comes forward with evidence to rebut it.

Were the presumption to vanish, 'courts would be giving too little deference to Congress' findings regarding this class [of crimes].'" *United States v. Lattner*, 23 F. App'x 363, 364 (6th Cir. 2001) (quoting *United States v. Martir*, F.2d 1141, 1144 (2d. Cir. 1986)).  Drug trafficking is, in and of itself, an offense that poses a serious danger to the community.  *Stone*, 608 F.3d at 955 n. 6.  Thus, the presumption persists as a pro-detention consideration and, overall, this factor firmly favors detention.

### 2.   <u>Weight of the Evidence of Dangerousness</u>

The second factor—the weight of the evidence of a person's dangerousness—goes only to the likelihood that the defendant will pose a danger to the community or a risk of flight; it is not a pretrial determination of guilt.  *Stone*, 608 F.3d at 948.  In weighing the strength of the evidence, the district court may not modify or limit the defendant's presumption of innocence.  18 U.S.C. § 3142(j).

The facts alleged in the Complaint, the testimony offered by Agent Hill, and the United States' proffer constitute very serious allegations that Berry and Steward ran a highly sophisticated drug trafficking operation.  Agent Hill testified as to multiple transactions involving suspected narcotics, all involving Berry and Steward. Even during the July 13, 2023 transaction, where Steward was not physically present during the exchange, Agent Hill testified that she was at a nearby gas station waiting and presumably conducting counter surveillance with another individual.

In addition to showing the existence of the alleged drug trafficking operation, the weight of the evidence suggests that Steward had a very active role in the operation's routine activities.  First, Steward rented both the Lynnwood and Redding

Road apartments, which both contained paraphernalia indicative of drug trafficking. The Court specifically notes that Steward was observed by law enforcement transporting items from Lynnwood and Redding Road to the storage facility where 6 kilos of cocaine were found during the execution of a search warrant. Video surveillance, according to Agent Hill's testimony, revealed that Steward often transported items between the three locations without Berry present. Evidence suggests that she at least helped facilitate the compartmentalization of a sophisticated drug trafficking operation while actively moving product between locations rented in her name. In essence, the weight of the evidence shows that Steward's role in the alleged drug trafficking operation was not minor or passive, but rather highly active.

Moreover, the weight of the dangerousness is aggravated by the sheer volume of drugs Steward was involved with moving during the DEA's investigation. Agent Hill testified that Steward and Berry were making drops with suspected suppliers at least once a week and moving between 8–10 kilograms of controlled substances per drop over the course of about seven months.

These facts all heavily favor detention, as they depict a sophisticated trafficking operation moving large quantities of drugs by using multiple, compartmentalized locations. Such sophisticated trafficking schemes pose the greatest risk for persisting distribution activity. *See United States v. Bucio*, No. CR 5:17-055-DCR, 2019 WL 4397334, at *3 (E.D. Ky. Sept. 13, 2019) (recognizing that "the nature and circumstances of the offense in issue weigh[ed] in favor of" detention

where "they ar[o]se in the context of a large drug trafficking scheme"). There is weighty evidence of Steward's potential danger to the community, as the risk of continued trafficking falls squarely within the BRA's danger concept. *See United States v. Holden*, No. 17-CR-33-JMH-1, 2017 WL 1362684, at *2 (E.D. Ky. Apr. 12, 2017) (mentioning that the dangers associated with drug trafficking "leading to near fatal overdoses cannot be overstated"). Accordingly, the second factor strongly favors Steward's pretrial detention.

### 3.   <u>History and Characteristics of the Person</u>

The third BRA factor considers the history and characteristics of the person. *See* 18 U.S.C. § 3142(g)(3). This factor largely favors release, due to Steward's limited criminal history and absence of any prior felony offenses. The most serious prior offense was a shoplifting charge, for which she served 180 days in jail and 2 years on supervised probation. [PSR at pg. 4]. However, Steward's scant criminal history is tempered by her substance use beginning at age 15 or 16, for which she has evidently not sought treatment. During her pretrial services interview, Steward reported not having used any controlled substances since July 14, 2023, but was arrested on July 18, 2023 while clearly under the influence of some controlled substance. Her history of substance use paired with a lack of candor raise concerns that she may not comply with conditions designed to mitigate her danger to the community. On balance, this factor is mixed and does not meaningfully weigh in favor of detention or release.

4.    **Nature and Seriousness of the Danger**

The fourth and final factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g)(4).   In the context of drug trafficking, the Court considers Steward's potential danger to the community to be grave.  *See, e.g., United States v. Flowers*, No. 3:05-CR-72, 2005 WL 1981364, at *4 (E.D. Tenn. Aug. 17, 2005) (observing that the "sale of drugs [ ] establish[es] a significant danger"); *United States v. Pina-Aboite*, 97 F. App'x 832, 836 (10th Cir. 2004) ("[T]he danger-to-the-community factor is not simply about physical violence; the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the community[.]").

The quantities of cocaine alleged to be distributed aggravates the danger associated with Steward's conduct.[4]  *See United States v. Bland*, No. CR PWG-15-141, 2020 WL 1904742, at *3 (D. Md. Apr. 16, 2020) (concluding that "given the sheer quantity of narcotics Defendant has shown that he is capable of obtaining and distributing, Defendant poses a significant danger to the safety of the community"); *United States v. Holden*, No. 17-CR-33-JMH-1, 2017 WL 1362684, at *2 (E.D. Ky. Apr. 12, 2017) (noting that the dangers associated with drug trafficking "leading to

---

[4] The Court briefly notes that the United States advanced arguments that the firearms associated with the investigation are also aggravating as to the dangerousness of the alleged drug trafficking operation.  The Court is not persuaded that lawful possession of firearms, without some evidence that the firearm is used to carry out drug trafficking operations, should weigh into the danger analysis.  *See United States v. Zapien*, No. 3:14-cr-00037-1, 2014 U.S. Dist. LEXIS 35231, at *14 (M.D. Tenn. Mar. 17, 2014) (citing *United States v. Bowers*, 432 F.3d 518, 521 (3rd Cir. 2005)) ("Possession of a firearm can occur in an array of non-violent circumstances, weakening the link between possession and violence[.]").  Here, law enforcement recovered a firearm from Berry and Steward's shared closet, and on Steward's person during her arrest.  There is no evidence or testimony that either weapon was used to carry out drug trafficking operations.  Accordingly, the firearms do not have weight in Steward's BRA analysis.

near fatal overdoses cannot be overstated"). The evidence discussed above viewed through the BRA lens heavily weigh in favor of detention.

In sum, the United States has shown by clear and convincing evidence that the BRA factors weigh in favor of finding that Steward poses a significant danger to the community. Given the nature of the allegations, the Court cannot be reasonably assured that Steward will not resume involvement with drug trafficking if she is released. Put differently, the Court cannot identify a condition or combination of conditions that could reasonably ensure the safety of the community if Steward were to be released pending trial. *See, e.g., United States v. Nova*, No. CR 16-060-02 S, 2016 WL 6471205, at *2 (D.R.I. Nov. 1, 2016) (finding that electronic monitoring and home detention conditions would not be effective to mitigate danger where the defendant could easily participate in the charged drug distribution scheme from his home). Accordingly, the BRA requires that Steward be detained pending trial based on her potential danger to the community.

## IV.  CONCLUSION

Ultimately, the Court finds that the United States has not proved by a preponderance of the evidence that no conditions could ensure Steward's future appearance at Court proceedings. However, the Court does find that the Government has shown—by clear and convincing evidence—that no condition or combination of conditions could reasonably assure community safety. Accordingly, the Court **GRANTS** the United States' oral detention motion. As the BRA mandates in this case, Steward shall remain in custody pending trial.

The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

14

Entered this 2nd of August, 2023.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY